UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
_____

VANESSA MEIRS, as Personal Representative
of the ESTATE OF SCOTT MEIRS,

    Plaintiff,

vs.

OTTAWA COUNTY, a Municipal Corporation,
by and through its agency, the Ottawa County
Sheriff's Department; Ottawa County Sheriff's
Deputy LINDA CASHMAN; Ottawa County
Sheriff's Deputy GENE MURIN;  Ottawa
County Sheriff's Deputy JOSEPH DIRETTE

    Defendants.

Case No.:
U.S. District Judge
U.S. Magistrate Judge

**COMPLAINT AND**
**JURY DEMAND**

_____/
Steven T. Budaj, P.C.
By Steven T. Budaj (P30154)
65 Cadillac Square, Suite 2915
Detroit, MI  48226
313-963-9330

William H. Goodman (P14173)
Julie H. Hurwitz (P344720)
Kathryn Bruner James (P71374)
Goodman & Hurwitz, P.C.
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170/Fax: (313) 567-4827

Amy Labenz (P78147)
1394 E. Jefferson Ave.
Detroit, MI  48207
(313) 567-6170/Fax: (313) 567-4827
*Attorneys for Plaintiff*
_____/

1

## COMPLAINT AND JURY DEMAND

Plaintiff VANESSA MEIRS, as the Personal Representative of the Estate of Scott Meirs, by and through her attorneys, states for her Complaint and Jury Demand against Defendants as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which Plaintiff VANESSA MEIRS, as the duly appointed Personal Representative of the Estate of Scott Meirs, seeks relief and all damages that flow from Defendants' multiple violations of decedent Scott Meirs' rights, privileges, and immunities as secured by the Fifth and Fourteenth Amendments to the United States Constitution, pursuant to the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988.

2. During the period between August 4, 2013 and August 9, 2013, Defendants owed the Plaintiff's decedent, a pretrial detainee, a duty to protect him from the clear and known danger of suicide, which Defendants ignored, and from which they failed to protect him. In so doing, Defendants violated the rights of the Plaintiff's decedent to due process. These violations were a proximate cause of the death of Scott Meirs and of the consequent damages to his Estate.

3. Plaintiff VANESSA MEIRS was the wife of Scott Meirs and the mother of minors "D.M." and "M.M.", the two young children, of Scott Meirs,

whose death on August 13, 2013 was a proximate result of Defendants' deliberately indifferent and unconstitutional failure to respond to his serious medical needs while he was a pretrial detainee at the Ottawa County Jail.

4. On behalf of the Estate of Scott Meirs, as the Personal Representative thereof, VANESSA MEIRS seeks all relief appropriate and allowable resulting from the constitutional violations Defendants inflicted upon Scott Meirs.

5. As part of the aforementioned relief, Plaintiff seeks damages for the Estate, including any and all damages recoverable under the Michigan Wrongful Death Act, M.C.L.A. §600.2922(6), certain declaratory relief, an award of attorney fees and costs, and any further relief the Court deems proper.

## JURISDICTION AND VENUE

6. This Court has jurisdiction, as this is a federal action arising under the Fifth and Fourteenth Amendment to the United States Constitution and brought pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. § 1983.

7. Pursuant to 28 U.S.C. § 1391 (b)(2), venue is proper in the United States District Court for the Western District of Michigan because it is the judicial district in which the events giving rise to the claim occurred.

## PARTIES

8. Plaintiff's Decedent Scott Meirs was the husband of Plaintiff VANESSA MEIRS and the father of their two young children, D.M. and M.M. At

the time of the incidents which gave rise to this litigation, they lived together in the Village of Spring Lake, Michigan.

9. Scott Meirs had enjoyed a long, close, and loving relationship with his father, Merrit Miers, his sister, Valerie Palo and his niece, Carrie Palo.

10. Scott Meirs was a veteran of the United States Army and, as of the date of his arrest and subsequent death while in custody, Mr. Meirs was being treated by the Veterans Administration for post-traumatic stress disorder, depression, chronic pain, and drug addiction.

11. Plaintiff VANESSA MEIRS is the duly appointed Personal Representative of the Estate of Scott Meirs'. She resides in Grand Haven, Michigan.

12. Defendant COUNTY OF OTTAWA (hereafter "COUNTY") is a Municipal Corporation authorized by the laws of the State of Michigan to operate the Ottawa County Jail. As part of its responsibilities and services, the COUNTY also operates a law enforcement agency (the Ottawa County Sheriff's Department) that, among other duties and responsibilities, operates and controls the COUNTY'S Jail System, including the Ottawa County Jail. At all relevant times herein, the COUNTY acted under color of law and pursuant to certain customs, policies, and practices, which were the moving force behind the constitutional violations asserted herein.

13. Defendants, Sheriff's Deputy LINDA CASHMAN, Sheriff's Deputy GENE MURIN and Sheriff's Deputy JOSEPH DIRETTE are and/or were at all times relevant hereto Ottawa County Jail Corrections Officers who were employees and agents of Defendant COUNTY, acting under color of law, within the scope of their employment and authority, and pursuant to the COUNTY'S customs, policies, and practices.

## FACTUAL ALLEGATIONS REGARDING THE DEATH OF SCOTT MEIRS

14. For several years prior to his death, Scott Meirs had become addicted to prescription drugs, arising from prior medical conditions and/or injuries.

15. Prior to his arrest and detention on August 4, 2013, Scott Meirs also had a known history of mental illness that included Post Traumatic Stress Disorder, depression, and suicidal ideation, in addition to his known drug addiction.

16. Shortly before his arrest, pretrial detention and death, a neighbor reported to the Ottawa County Sheriff's Department that Mr. Meirs had entered her home and stolen her prescription drugs.

17. On or about August 4, 2013, Scott Meirs was arrested for the home invasion of his neighbor's residence.

18. Mr. Meirs was charged with second degree home invasion. Thereafter and leading up to his tragic death, he was held as a pretrial detainee in the Ottawa

5

County Jail, located in West Olive, Michigan.

19. The arrest in question was clearly connected to Scott Meirs' addiction to prescription medication and the emotional/psychological sequelae associated therewith.

20. Prior to his arrest and detention, Scott Meirs had been a resident of Spring Lake, Michigan. He resided there with his wife, Plaintiff VANESSA MEIRS, and their two minor children D.M. and M.M., where they had, until his lapse into drug addiction and severe emotional and physical problems, enjoyed a long, close, mutually supportive, and loving relationship.

21. Further, notwithstanding Scott's history of physical and emotional decline, VANESSA MEIRS, her children and the rest of his family continued to support and love him.

22. At the time of his admission to the Ottawa County Jail, it was noted that Mr. Meirs was prescribed and taking medication, including *methadone* and *gabapentin*. *Methadone* is an opioid often used for drug addiction detoxification and maintenance; it is also used as a pain reliever. Among its known side effects of are severe depression and anxiety. *Gabapentin* is a medication often used to relieve chronic severe pain. It is also prescribed for both anxiety and bi-polar disorders and can be used to treat opiate withdrawal symptoms. It has known side effects that it can cause severe depression, suicidal thoughts and suicide.

23. On the same date, as Scott Meirs was booked and admitted as an inmate in the Ottawa County Jail, he was screened and determined to be suffering from "withdrawal." He was immediately placed on an "opiate withdrawal" protocol, which was discontinued on August 7, 2013. At that time he was placed in general population at the Ottawa County Jail.

24. From the outset and throughout his residency at the Ottawa County Jail, it was clear that Mr. Meirs was a very troubled jail inmate who required intense and frequent, if not constant monitoring, as evidenced by the following facts known to Defendants at all relevant times while he was in the County Jail:

   a. A clinical history of post-traumatic stress disorder, depression and suicidal ideation;

   b. His prescription use of *gabapentin* and *methadone*;

   c. On August 7, 2013 he complained of severe symptoms resulting from the failure of the Jail to give him adequate access to pain and/or anti-depressant medication;

   d. Also, on August 7, 2013, Mr. Meirs was heard by both Defendants MURIN and DIRETTE to complain about not receiving all the medication he was supposed to receive;

   e. At that time, he was identified by Defendant MURIN as a troubled inmate with a volatile temper who might attempt to cause a disturbance and who therefore required close scrutiny and observation;

   f. Early in the morning of August 8, 2013, Mr. Meirs complained of a sharp, stabbing and persistent pain in his abdomen. While a medical evaluation was advised for the following day, such an evaluation never occurred;

g. At some point during the day of August 8, 2013, Mr. Meirs again complained about the inadequacy of the medication he had received; he sent at least two written medical requests for assistance and medication, including anti-depressant and pain relief medication, which he had been prescribed;

h. Sometime during the free time period on August 8, 2013, Scott Meirs told several other inmates that he intended to commit suicide;

i. Thereafter, between 8:30 and 9:00 p.m. on August 8, 2013, Mr. Meirs allegedly violated Jail rules, at which time he was removed from the general population "free time" and locked-down in his cell where he was isolated, unmonitored and alone;

j. Also between 8:30 p.m. - 9:00 p.m., Defendant CASHMAN was approached by several very concerned inmates, who were housed in the same area as Mr. Meirs, and Defendant CASHMAN was told by those inmates that Scott Meirs had threatened to kill himself. She advised those inmates that she would take action;

k. Very shortly thereafter, at approximately 9:00 p.m., CASHMAN advised Defendants MURIN and DIRETTE that she had learned that Mr. Meirs was threatening to kill himself; and

l. Defendants CASHMAN, MURIN, and DIRETTE failed to take further action with regard to Mr. Meirs' suicidal statements.

25. Having been advised between 8:30 p.m – 9:00 p.m. that Mr. Meirs had threatened suicide several times that day, Defendants nonetheless kept Mr. Meirs locked in a cell alone, where the only monitoring of him was in the form of rapid walk-bys of his cell, once every hour, at best. While one or two of these walk-bys included a quickly visual observation through the cell door window, sometimes they did not. There was never any eye-to-eye or verbal contact;

26. Video tapes disclose that the last time any of the Defendants actually

8

even looked into Scott Meirs' cell was at or about 10:51 p.m.;

27. Thereafter, at approximately 1:44 a.m., Defendant DIRETTE, while conducting his rounds, discovered Scott Meirs hanging in his cell, having used his bedsheet to do so.

28. Based on the aforementioned facts – individually and collectively – these Defendants were on actual notice that Scott Meirs manifested a serious medical need that required immediate attention, care and treatment.

29. Nevertheless, Defendants, acting pursuant to Defendant COUNTY's customs, policies and/or practices, and without the necessary training, deliberately disregarded Scott Meirs' serious medical needs. For example, not one of the individual Defendants undertook any action either to inquire of or to question Mr. Meirs regarding his emotional and/or psychological condition or to ask him about his threats of suicide, seek medical or psychological attention for him and/or to increase surveillance/monitoring of him.

30. Rather, Defendants continued to keep Mr. Meirs locked alone in a cell without frequent or regular monitoring, let alone continuous observation, as required by the known and clearly articulated risk of suicide.

31. Indeed, even after learning that Mr. Meirs had threatened suicide and thus knowing that he was potentially suicidal, these Defendants left him alone locked into his cell for hours and failed to promptly undertake the following

reasonable and well-accepted precautionary measures, among others, so as to reduce the risk and prevent Mr. Meirs from committing suicide:

    a. To conduct preliminary questioning of Mr. Meirs so as to assess the validity of the concerns explicitly expressed by his fellow inmates;

    b. To seek the needed professional mental health care assessment of and attention for Mr. Meirs;

    c. To relocate Mr. Meirs to a suicide prevention location so as to be better able to undertake frequent and/or continuous surveillance, as distinguished from the very brief and casual—at most—glances at him every hour or two;

    d. To remove any paraphernalia, such as sheets, which could be—and ultimately were—used by Mr. Meirs, a suicidal individual to cause serious injury or death to himself; and

    e. To take any other reasonable precautionary measures to adequately protect Mr. Meirs from the dire psychiatric emergency in which he found himself.

32. Consequently and as a result of Defendants' conduct and failure to act, at approximately 1:44 a.m. on the morning of August 9, 2013, Mr. Meirs was found unconscious in his cell as a result of asphyxia having, at some time prior thereto, hung himself with his bed sheet.

33. As a consequence, Mr. Meirs was hospitalized for several days and died in the hospital on August 13, 2013.

34. At the time of Mr. Meirs' suicide attempt and subsequent death, Defendants CASHMAN, MURIN, DIRETTE, COUNTY and its Sherriff's Department were well aware that custodial detention and jailing present a highly

foreseeable and heightened risk of suicide for those who threaten suicide and who fit the profile and history of inmates such as Scott Meirs, and including Plaintiff's Decedent Scott Meirs.

35. Defendants were on actual and particular notice that the Plaintiff's Decedent Scott Meirs presented a known risk of suicide, for all the reasons stated above, including, as well, his reported history of depression, his addiction to pain medications *and* that he had specifically communicated to his fellow prisoners that he intended to commit suicide, which threat had then, in turn, been communicated to Defendants.

36. Despite the aforementioned actual knowledge of the risk of suicide to Scott Meirs within the Ottawa County Jail, the COUNTY, up to and including August 8 and 9, 2013, failed to take adequate steps to address and reduce that risk.

37. This systemic lack of an adequate response and/or procedure constituted a custom, practice and/or policy that affirmatively failed to address the serious medical needs of suicidal inmates such as Plaintiff's Decedent Scott Meirs.

38. As a result of the of the customs, policies and practices, all of the clearly necessary precautions, as set forth in Paragraph 31 above, were deliberately disregarded and/or ignored.

39. Further, the Defendant COUNTY and its Sheriff's Department failed to train, discipline, and/or supervise Ottawa County Jail staff, including the

individually named Defendants herein, in accordance with the following principles:

    a. That all staff, including the individual Defendants herein, be trained to recognize the warning signs of suicidal behavior and respond appropriately;

    b. That there be an immediate, urgent, predictable, consistent and mandatory response to any sign or evidence of a recognizable and significant risk of suicide by any prisoner at that jail, for example those enumerated in Paragraph 31, herein above;

    c. That all medical requests ("kites"), in particular those that are urgent, be read, addressed, and attended to appropriately and promptly;

    d. That when, as here, there is an immediate, significant and recognizable risk of suicide, immediate and urgent steps must be taken to prevent the suicide;

    e. That there be continuous surveillance of persons evidencing a recognizable and significant risk of suicide;

    f. That through supervision, training and discipline, threats of suicide must be recorded and addressed immediately, consistently and predictably so that none could be ignored, disregarded, procrastinated or responded to in deleterious manner by Ottawa County Jail staff;

    g. That the failure by Ottawa County agents, officials, and employees, including Defendants CASHMAN, DIRETTE and MURIN, above, to comply with any of these principles, as set forth in subparagraphs (a)–(f) above, would result in consistent disciplinary actions from Defendant COUNTY, as well as responsive supervision and training.

    40. All of the customs, policies and practices described and identified in Paragraphs 36-39 above, as well as the customs, practices, and policies of the COUNTY and its Sheriff's Department, set forth below, were a moving force in

the Defendants CASHMAN, DIRETTE and MURIN's failure to respond to Scott Meirs' serious medical needs, which contributed to and/or enabled his death. Those customs, policies and practices are as follows:

a. That suicidal and potentially suicidal inmates who entered the Jail with Scott Meirs' profile, and/or who subsequently exhibited or expressed feelings of depression or potentially self-destructive behavior while in the Jail, were *not* promptly interviewed, observed and/or seen by mental health care professionals;

b. That suicidal and potentially suicidal inmates, such as Scott Meirs, who entered the Jail exhibiting depressed or potentially self-destructive behavior while in the Jail, were *not* routinely placed on suicide watch;

c. That the routine response to threats of suicide was inconsistent and unpredictable. As a consequence, such threats were regularly ignored by Ottawa County Jail staff, including Defendants CASHMAN, DIRETTE and MURIN, without the constraint of a policy that requires that there be an immediate and urgent response to any recognizable and significant risk of suicide by any inmate at the Jail, including Scott Meirs; and

d. That there was a failure to adequately train, supervise and discipline the Jail staff so that when an inmate presented suicidal characteristics such as those demonstrated by Scott Meirs, that staff had no clear guidance and/or mandate as to the correct and appropriate response.

## CLAIMS

### COUNT I:

### 42 U.S.C. §§ 1983 and 1988
### FIFTH/FOURTEENTH AMENDMENTS, DUE PROCESS
### DELIBERATE INDIFFERENCE TO KNOWN
### SERIOUS MEDICAL NEEDS

**(as to Defendants COUNTY, CASHMAN, DIRETTE and MURIN)**

41. Plaintiff incorporates by reference the allegations in Paragraphs 1 through 40 as if fully set forth herein.

42. The actions and failures to act of all Defendants, individually and collectively, as set forth in detail herein, constituted deliberate indifference to pretrial detainee Scott Meirs' known serious medical needs and violated his Constitutional right to due process, as secured by the Fifth and Fourteenth Amendments of the United States Constitution.

43. Defendants COUNTY, CASHMAN, DIRETTE and MURIN at all relevant times acted under color of law and within the scope of their responsibilities or employment and authority to deprive Scott Meirs of his right to due process of law, as secured by the Fifth and Fourteenth Amendments of the United States Constitution, and consequently are liable pursuant to 42 U.S.C. § 1983.

44. In this respect, and for all of the reasons set forth above, the COUNTY and one or more of Defendants CASHMAN, DIRETTE and MURIN were deliberately indifferent to Scott Meirs' known serious medical and psychological needs.

45. As a direct and proximate result of the aforementioned acts and conduct of the Defendants COUNTY, CASHMAN, DIRETTE and MURIN, Plaintiff suffered the following injuries and damages:

    a.    As to the Decedent Scott Meirs:

        i.    Conscious physical and emotional pain, suffering, anguish, distress, and fear;

        ii.    Physical injury culminating in death;

    b.    As to the Estate and survivors,[1] under the Michigan Wrongful Death Act, MCL §600.2922, *et seq.*:

        i.    Loss of love, society and companionship;

        ii.    Emotional distress and anguish;

        iii.    Loss of emotional support;

        iv.    Loss of services;

        v.    Loss of earnings and earning capacity;

        vi.    Loss of future economic support;

        vii.    Hospital, funeral, and burial expenses; and

        viii.    Other damages.

## COUNT II:

## 42 U.S.C. §§ 1983 and 1988
## *MONELL* CLAIM

### (as to Defendant OTTAWA COUNTY only)

46.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 45 as if fully set forth herein.

47.    The COUNTY adopted, implemented, supplemented, reinforced and/or

---

[1] As allowed by 42 U.S.C. §§ 1983 & 1988, as it adopts and reflects the Michigan Wrongful Death Act, MCL § 600.2922, *et seq.*, see *Robertson v. Wegmann,* 438 U.S. 584 (1978); *Frontier Insurance Co. v. Blaty,* 454 F.3d 590, 598-99 (6th Cir. 2006).

promulgated policies, customs, and practices, as set forth above, in particular in Paragraphs 36-40, all of which were a proximate cause and/or a moving force in the violations of Scott Meirs' constitutional rights.

48. The COUNTY implemented and encouraged policies, practices, and customs, as set forth above, with deliberate indifference to the rights of inmates within the custody of the Ottawa County Jail, specifically with regard to Scott Meirs' constitutional right to due process in the form of care and treatment for his known serious medical needs.

49. As a direct and proximate result of the acts and conduct of the Defendants, Plaintiffs suffered the following injuries and damages:

    a. As to the Decedent Scott Meirs:

        i. Conscious physical and emotional pain, suffering, anguish, distress, and fear;

        ii. Physical injury culminating in death;

    b. As to the Estate and survivors,[2] under the Michigan Wrongful Death Act, MCL §600.2922, *et seq.*:

        i. Loss of love, society and companionship;

        ii. Emotional distress and anguish;

        iii. Loss of emotional support;

---

[2] As allowed by 42 U.S.C. §§ 1983 & 1988, as it adopts and reflects the Michigan Wrongful Death Act, MCL § 600.2922, *et seq.*, see *Robertson v. Wegmann,* 438 U.S. 584 (1978); *Frontier Insurance Co. v. Blaty,* 454 F.3d 590, 598-99 (6th Cir. 2006).

      iv. Loss of services;

      v. Loss of earnings and earning capacity;

      vi. Loss of future economic support;

      vii. Hospital, funeral, and burial expenses; and

      viii. Other damages.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands the following relief, jointly and severally against all Defendants:

(a) A declaration that Defendants violated the constitutional rights of Plaintiff's decedent, Scott Meirs;

(b) Compensatory damages for physical, emotional, psychological, and economic injuries suffered by Plaintiff's decedent Scott Meirs and his Estate by reason of Defendants' unlawful and unjustified conduct, in an amount fair, just and reasonable and in conformity with the evidence at trial and as allowed by:

    i. 42 U.S.C. §1983; and

    ii. 42 U.S.C. §1988, including but not limited to damages recoverable under the Michigan Wrongful Death Act, MCL § 600.2922, *et seq.*

(c) Punitive and exemplary damages against the individual Defendants to the extent allowable by law;

(d) Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

(e) The costs and disbursements of this action; and

(f) Such other and further relief as appears reasonable, just and proper.

                              Respectfully submitted,

                              **Goodman & Hurwitz, P.C.**

                              *s/ William H. Goodman*_____
                              William H. Goodman (P14173)
                              Kathryn Bruner James (P71374)
                              Julie H. Hurwitz (P34720)
                              Goodman & Hurwitz, P.C.
                              1394 E. Jefferson Ave.
                              Detroit, MI 48207
                              (313) 567-6170/Fax: (313) 567-4827
                              bgoodman@goodmanhurwitz.com

-and-

                              Steven T. Budaj, P.C.
                              *s/ Steven T. Budaj*_____
                              by Steven T. Budaj (P30154)
                              65 Cadillac Square, Suite 2915
                              Detroit, MI  482226
                              313-963-9330
                              stbudaj@counsel.cc

-and-

                              Amy Willey Labenz (P78147)
                              *s/ Amy Labenz*_____
                              by Amy Labenz (P78147)
                              Of Counsel, Goodman & Hurwitz, P.C.
                              1394 E. Jefferson Ave.
                              Detroit, MI 48207
                              alabenz@goodmanhurwitz.com

                              *Attorneys for Plaintiffs*

Dated:  August 26, 2015

# **DEMAND FOR JURY TRIAL**

By and through their attorneys, GOODMAN & HURWITZ, P.C., VANESSA MEIRS on behalf of the Estate of Scott Meirs, as Personal Representative, hereby demands a trial by jury on all issues of this cause.

Respectfully submitted,

**Goodman & Hurwitz, P.C.**

*s/ William H. Goodman*
William H. Goodman (P14173)
Kathryn Bruner James (P71374)
Julie H. Hurwitz (P34720)
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170/Fax: (313) 567-4827
bgoodman@goodmanhurwitz.com

-and-

*s/ Steven T. Budaj*
Steven T. Budaj, P.C.
by Steven T. Budaj (P30154)
65 Cadillac Square, Suite 2915
Detroit, MI  482226
313-963-9330
stbudaj@counsel.cc

-and-

*s/ Amy Labenz*
by Amy Labenz (P78147)
Of Counsel, Goodman & Hurwitz, P.C.
1394 E. Jefferson Ave.
Detroit, MI 48207
alabenz@goodmanhurwitz.com
*Co-Counsel for Plaintiffs*

*Attorneys for Plaintiffs*

Dated:  August 26, 2015