*Gary M. Vilke, M.D., FACEP, FAAEM*
*11582 Normanton Way*
*San Diego, California 92131*
*(619) 666-8643*

**EXHIBIT 1**

August 10, 2017

Daniel Cortez
Foley, Baron, Metzger & Juip, PLLC
Cambridge Center
38777 Six Mile Rd., Suite 300
Livonia, MI 48152

RE:   Venessa Meirs v Ottawa County, et al.
        Case No.: 1:15-cv-00866-PLM-RSK

## Introduction

I am a board-certified emergency department physician with substantial experience in custody medicine and have provided medical care to inmates at the San Diego County Jail for over 16 years. My qualifications are further delineated at the end of my report.

I have been retained as an expert to review relevant materials and provide expert opinion on the medical care offered to Mr. Scott Meirs while incarcerated at the Ottawa County Jail. After careful review, it is my opinion to a reasonable degree of medical certainty that there was not a breach in the medical care given to Mr. Meirs at the Ottawa County Jail. These opinions and related opinions are set forth in my report.

## Materials Reviewed

I have reviewed extensive materials pertaining to the above referenced case. This includes, but is not limited to:

**Case-Specific Materials**

1. First Amended Complaint
2. Jail and CCS Medical Chart
3. Meirs Death Investigation File
4. Autopsy Report
5. All OCJ 1-333 Searchable
6. County Records given to Plaintiff
7. VA Medical Grand Rapids
8. VAMC Medical
9. CHC Policies
10. Ottawa County JHCP&P
11. Deposition Transcript of Melinda Navis
12. Deposition Transcript of Dr. Joseph Natole
13. Deposition Transcript of Linda Cashman
14. Deposition Transcript of Megan Vink
15. Deposition Transcript of Rachel Lindemulder

## Overview of Opinions
(all opinions within this report are to a reasonable degree of medical or scientific probability)

An overview of my opinions is as follows with more description of each below:

1. **The medical care given to Mr. Meirs by medical staff while incarcerated in the jail between August 4, 2013 to August 9, 2013 was appropriate and did not breach standard of care.**

2. **Mr. Meirs had daily access to medical care while incarcerated at the jail and there was no evidence of deliberate indifference to his healthcare needs.**

## Analysis

After reviewing the above listed materials, it appears that on August 4, 2103, Mr. Scott Meirs, who was 50 years old, was arrested and brought to the Ottawa County Jail.

He had a medical screening evaluation performed that reflected that he was taking methadone and gabapentin. He reported that he had a history of neuropathy of his feet legs and hands. His vital signs were unremarkable and he was placed on regular checks for opiate withdrawal.

He was evaluated August 5, 2013 and had unremarkable vital signs. In a progress note, he was continued on the opiate withdrawal checks for opiate use, methadone. The nurse called Walgreens to verify the patient's claim of using gabapentin, but the pharmacist reported no pick up of meds since March 2012. Mr. Meirs had vital signs checked at least three times on August 5, 2013, all of which were unremarkable, and there is an order for gabapentin placed as well. He was evaluated by nursing on August 6, 2013 as well as August 7, 2013. At that point, his vital signs have been stable throughout the course of his monitoring and he was then cleared for general population.

On August 8, 2013 at 0900 in the morning, Mr. Meirs reported really bad right middle abdominal pain that was sharp and stabbing but did not radiate. He had a bowel movement the day before and reported no changes in color. His exam showed his right middle abdomen was tender but soft and hurt more when pressed and had relief when released. His vital signs were unremarkable and he was placed on the list to be seen by the physician in the morning.

That was the last reported interaction that Mr. Meirs had with the medical staff at the jail. At around 2100 on August 8, 2013, another inmate informed one of the deputies that Mr. Meirs had threatened to cut himself the next time he got a razor. At approximately 0140 in the morning, one of the deputies found Mr. Meirs with a sheet tied around his neck. He was cut down and resuscitative efforts were made. 911 was called and he was sent to the hospital for evaluation. Ultimately, Mr. Meirs never regained consciousness and he died on August 13, 2013. The medical examiner listed the cause of death as suicide.

Given this history, there are a number of issues that need to be addressed in more detail below. All opinions given are to a reasonable, or higher, degree of medical probability based on the information currently available.

### Detailed discussion and basis of opinions

1. **The medical care given to Mr. Meirs by medical staff while incarcerated in the jail between August 4, 2013 to August 9, 2013 was appropriate and did not breach standard of care.**

In reviewing the records of the medical care given to Mr. Meirs, I did not find any breaches in the standard of care. He was evaluated multiple times by nursing staff during his short incarceration between August 4, 2013 and August 8, 2013. He was seen by nursing multiple times including having at least seven sets of vital signs obtained over the four-day period. He had the outside pharmacy called to try to verify medications and he was monitored for opiate withdrawal. When he had abdominal pain, he was seen by nursing, had an assessment and a follow up plan was put into place. All of the assessments, treatments, and plans appear sound.

Overall, based on the review of medical records, the medical care given to Mr. Meirs while at the Ottawa County Jail by the jail staff was reasonable and appropriate and did not breach the standard of care.

2. **Mr. Meirs had daily access to medical care while incarcerated at the jail and there was no evidence of deliberate indifference to his healthcare needs.**

It is my opinion that nothing exists in the documents reviewed to suggest that nurses caring for Mr. Meirs at the Ottawa County Jail were deliberately indifferent to the

health care needs of Mr. Meirs. There are multiple ways at the jails in which individuals may request healthcare including, nursing lines during medication passes, clinics, and calls by deputies on behalf of inmates. In fact, when Mr. Meirs had abdominal pain, he was seen by nursing the next morning. Based on my review of the records, between August 4, 2013 and August 8, 2013, Mr. Meirs had direct communication and access with medical personnel on multiple occasions.

In my opinion, there is nothing that supports any claim of deliberate indifference to Mr. Meirs' medical needs by the nursing staff. He had direct and immediate access to medical personnel on average almost three times every day. There is no documentation that Mr. Meirs reported to nursing staff that he was suicidal or intended to harm himself. There were no indications for nursing to place Mr. Meirs into suicide precautions or suicide watch. This medical care is provided by licensed and qualified healthcare professionals who render appropriate evaluations and provide medically necessary care to inmates and detainees in the jail system.

## Background

My background is that I am a full-time faculty member in the department of emergency medicine at the University of California, San Diego Medical Center. I am residency trained and board certified in Emergency Medicine. I work full time as a practicing clinician in the Emergency Department of a busy urban hospital and serve as the clinical operations chief for our two emergency departments with a combined annual census of approximately 70,000 visits. I currently serve as the Medical Director for Risk Management for the UC San Diego Health System. I also serve as the UCSD Medical Center's Medical Risk Management Committee Chair and Allocation Committee Co-Chair, as well as previously having served as the Chair of the Patient Care and Peer Review

Committee, each of which are charged with the task of reviewing medical records and making determinations of standard of care. I am also the former Chief of Staff for the UCSD Medical Center.

I have worked for almost 20 years as a faculty emergency physician at an urban-based emergency department that is contracted to receive patients who in custody, both as field arrests and for on-going care while incarcerated. I served as the UCSD Director of Custody Services overseeing hospital services for the San Diego County Sheriff's Department Medical Services for 16 years. I also have worked in a jail setting for over 18 years, staffing weekly sick call clinics on site at the San Diego Sheriff's jails throughout San Diego County. I have also served as the on-site medical director for the San Diego Sheriff's medical clinics for 16 years where I have trained staff physicians, participated in quality assurance, resource utilization, policy and protocol development and peer review. I have also overseen the physician staffing for seven jails in San Diego County over that time.

As per Rule 26 formatting, Appendix A is a copy of my current Curriculum Vitae, which includes a list of all publications authored by me. Appendix B is a list of all cases in which I have testified as an expert in trial or deposition within the preceding four years. Appendix C is my fee schedule. The knowledge base that I utilize has been developed over time from my years of clinical practice and experience, reading and training as well as research. Under penalty of perjury, I hereby swear that the opinions stated above are true and correct within a reasonable degree of medical probability.

Respectfully submitted,

Gary M. Vilke, M.D., FACEP, FAAEM
Professor of Clinical Emergency Medicine
Emergency Medicine Clinical Service Chief and Co-Medical Director
Medical Director, Risk Management, UC San Diego Health
Director, Clinical Research for Emergency Medicine

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

August 10, 2017

_____
Gary M. Vilke, M.D., FACEP, FAAEM