UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Vanessa Meirs, as Personal )
Representative of the Estate of )
Scott Meirs, deceased, )
        Plaintiff, )
         ) No. 1:15-cv-866
-v- )
         ) HONORABLE PAUL L. MALONEY
Ottawa County et al., )
        Defendants. )
_____ )

## OPINION

Generally, when the Court admonishes parties to stop engaging in "unruly motions practice" and to "endeavor to work more collegially and efficiently" after a slew of blown deadlines and unnecessary delays, it is wise to heed the Court's instruction. Unfortunately, that has not happened here.

## I.     Background

To understand the nature of the cross-appeals currently before the Court, a bit of context is necessary. Plaintiff Vanessa Meirs maintains that Ottawa County, Correct Care Solutions, and individuals associated with these two entities violated her decedent, Scott Meirs' Eighth Amendment right to medical care while he was in custody. She claims that they failed to take adequate precautions to prevent him from taking his own life on August 4, 2013.

It took a significant amount of time to get the case to discovery. It was originally filed in August of 2015, and Plaintiff filed an amended complaint nearly one year later to add Correct Care Solutions and individual employees of the entity (collectively "CCS Defendants"

or "CCS"). The Court then extended discovery deadlines on multiple occasions in the Fall of 2016 to accommodate the new dimensions of the action.

In February of 2017, CCS requested the names of all people with claims for damages and their medical records, including mental health records. (ECF No. 200-4.) Plaintiff responded in March. (ECF No. 200-6.) At the time, Plaintiff was still collecting the records, so the disclosure was incomplete. On July 12th—two days prior to the close of discovery—CCS asked Plaintiff to supplement her answers to interrogatories and requests for production. (ECF No. 200-8.) Plaintiff claims to have been "preoccupied" by separate discovery issues—CCS Defendants had given a late response to another discovery request and had not filed revised affidavits or identified a Rule 30(b)(6) representative. (ECF No. 200 at PageID.2693.) Plaintiff did not supplement the disclosures or produce the additional mental health records that existed in response to CCS' request.

On September 1, 2017, Plaintiff served expert reports to CCS Defendants with lists indicating which records each of the two experts had consulted. (*Id.*) A significant number of unproduced counseling records for Plaintiff and each child were included on the list. (*See* ECF No. 195 at PageID.2515–16.) On September 26, CCS emailed Plaintiff, seeking concurrence to strike Plaintiff's experts for failure to produce the relied upon evidence. The next day, plaintiff's counsel responded that they did not know which documents CCS was referring to and "if [they] could identify the documents . . . [Plaintiff's counsel] would have a better idea whether or not we concur." (ECF No. 200-2.) One hour later, CCS Defendants filed the motion to strike, triggering a flurry of submissions to the Court.

The CCS Defendants attempted to have Plaintiff's expert reports stricken from the record on two grounds. First, because of the aforementioned medical records that Plaintiff's counsel inadvertently failed to produce. Second, the expert report referenced Plaintiff's social security records as relied-upon documents. Plaintiff had previously argued to the Court that the social security records were irrelevant. Accordingly, Defendants asked the Court to strike the expert reports for relying on irrelevant evidence. Two days later, Plaintiff mailed a letter to the CCS Defendants to clarify that the experts had not actually relied on the social security records; their inclusion on the referenced document list was a clerical error. (ECF No. 200-3.) She offered to obtain affidavits from the experts to confirm her account. Plaintiff also contacted the experts and had them mail copies of all reviewed documents to her as a precautionary measure. The documents sent by the experts were burned onto a CD and mailed to CCS Defendants. Plaintiff then asked CCS to withdraw the motion.

CCS did not respond, so Plaintiff filed a response to the motion on October 11, 2017. (ECF No. 200.) She claimed that the motion was meritless because her failure to disclose the medical records was inadvertent and because the experts had not actually relied on the family social security records.

Magistrate Judge Kent held a hearing on the motion on October 19, 2017 and issued an order the same day. The two-page order denied Defendant's motion to strike the expert reports. The Court then sanctioned plaintiff's counsel for "failing to produce the documents in controversy in a timely manner." It also sanctioned CCS' counsel for "bringing a spurious motion in direct contravention of Judge Maloney's Order of June 20, 2017." Both sanctions were in the amount of $500 and payable to the Court.

3

Rather than snuff out this unnecessary spat, Judge Kent's order spurred it on to new heights. The parties have both appealed from the order, claiming that their respective sanctions were contrary to law. Notably, the CCS Defendants do not argue that Judge Kent erred when he denied their motion to strike the expert reports; they challenge only the sanction imposed. Plaintiff then filed a 15-page response in opposition to the CCS Defendants' appeal—a decision that perfectly encapsulates the imprudent litigation tactics that had already drawn the Court's ire and which led directly to the sanctions at issue. Because neither sanction imposed by Judge Kent was contrary to law, the Court will affirm Judge Kent's October 19 order and overrule the appeals.

## II.     Standard of Review

Orders of magistrate judges on non-dispositive matters can be appealed under 28 U.S.C. § 636(b)(1)(A). *See also* W.D. Mich. LCivR 72.3(a). Legal conclusions are set aside if they are contrary to law. *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001) (citing *United States v. Raddatz*, 447 U.S. 667, 673 (1980).

## III.    Discussion

### A.  Judge Kent's imposition of sanctions on CCS Defendants' counsel was not contrary to law

The Court sanctioned CCS Defendants' counsel for bringing a spurious motion in contravention of the Court's prior order admonishing the parties to cease the unruly motions practice and work more collegially. CCS claims that their motion to strike Plaintiff's experts and expert opinions was not "spurious." In support, they cite the Cambridge Dictionary definition of spurious: based on false reasoning or information that is not true, and therefore not to be trusted. CCS states that their motion "was brought pursuant to the Federal Rules of

Civil Procedure and relevant case law and it certainly was not spurious." (ECF No. 204 at PageID.2755.)

There are two problems with CCS' argument. First, "spurious" means a number of different things. It can also describe something "of doubtful or low quality," *Black's Law Dictionary* (10th ed. 2014), or "of a deceitful nature or quality." Merriam-Webster, *spurious*, available at https://www.merriam-webster.com/dictionary/spurious?src=search-dict-hed (last visited December 7, 2017). CCS' argument was of a deceitful nature because the representation made to the Court was that Rule 37's sanction—exclusion of the expert reports for withholding discovery—was "mandatory and without qualification." (ECF No. 195 at PageID.2517.)

As support for this statement of law, CCS cited *Roberts v. Galen of Virginia*, 325 F.3d 776, 782 (6th Cir. 2003). There, one of the defendant's expert reports was not signed, did not refer to the data used to form the expert's opinion, did not list the expert's publications, did not disclose the amount he was compensated, and did not include his curriculum vitae. The trial court denied the plaintiff's motion to strike the expert but ordered that the expert's testimony was limited to the same conclusions as another expert had reached. The Sixth Circuit resolved the issue by noting that Federal Rule of Civil Procedure 37(c)(1) requires mandatory exclusion *unless the sanctioned party can show the violation was justified or harmless*. The court concluded that nondisclosure was harmless because the plaintiff had been aware of it for five months and would not be surprised by the expert's opinions. That is a far cry from CCS' assertion that "exclusion is *mandatory and without qualification*." (ECF No. 195 at PageID.2517 (emphasis added).) In fact, dicta from *Galen* indicates that exclusion is

*never* mandatory. "Rule 37(c)(1) . . . provides several remedies to a district judge. . . .The provision on sanctions explicitly states in pertinent part that 'in lieu of this sanction [of total exclusion], the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.' Rule 37(c)(1) does not compel the district judge to exclude testimony in its entirety." *Galen*, 325 F.3d at 783–84. Accordingly, CCS' argument for mandatory exclusion was based on an erroneous reading of *Galen* and could be fairly characterized as spurious.

In addition, CCS represented to the Court that Plaintiff's experts relied on family social security records—and argued that their reliance on the "irrelevant" records was grounds for having their reports stricken from the record. (*Id.*) However, Plaintiff's counsel promptly informed CCS that the inclusion of the social security records on the document list was a clerical error and offered to obtain sworn affidavits from the experts themselves to verify their assertion. (ECF No. 200-3 at PageID.2704.) CCS Defendants never responded to this information, necessitating a response to the motion by Plaintiff. The proper course of action would have been to withdraw the motion and refile with only the argument that Plaintiff had failed to fully produce relevant discovery. The improper course of action was to persist with the motion after learning that the facts were not as they were represented in their submission to the Court—that would indeed be spurious. Accordingly, Judge Kent's imposition of sanctions on CCS Defendants' counsel in the amount of $500 for spurious motion practice was not contrary to law.

One issue relating to the CCS Defendants' sanction remains. Plaintiff claims that the $500 sanction should have been made payable to her, rather than to the Court under Federal Rule of Civil Procedure 37(a)(5)(B). (ECF No. 210 at PageID.2799–2800.) That rule states:

> If the motion [to compel disclosure of discovery] is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(B).

The Court concludes that Judge Kent's decision to make the sanctions payable to the Court rather than Plaintiff was not contrary to law because, given Plaintiff's own miscues discussed *infra*, it would have been unjust to make the award of sanctions payable to her.

### B.  Judge Kent's imposition of sanctions on plaintiff's counsel was not contrary to law

The Court must next determine whether Judge Kent's imposition of sanctions for failing to timely disclose documents in discovery was contrary to law. Plaintiff asserts that she did not act in bad faith, so the Court could not use its inherent authority to sanction her, and second, that Rule 37 does not provide authority to the Court to impose the sanctions because the Defendant did not prevail on the motion to strike.

Plaintiff is correct that bad faith is generally required for exercise of the Court's inherent powers to sanction litigants. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 511 (6th Cir. 2002) ("[A] district court may award sanctions pursuant to its inherent powers when bad faith occurs." (citation omitted)); *see also Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) (holding that the district court has inherent

7

authority to award sanctions when a party litigates in bad faith, vexatiously, wantonly, or for oppressive reasons).

However, the Court had authority to impose sanctions under Rule 37(c)(1)(C). That rule authorizes the Court to "impose other appropriate sanctions" instead of or in addition to payment of attorney's fees, when a party fails to disclose information or supplement an earlier response in discovery. *Id.* Plaintiff failed to supplement her disclosure of medical records. While she blames distractions caused by the CCS Defendants for her failure to do so, (ECF No. 200 at PageID.2693), it does not excuse her from her failure to produce relevant discovery for more than two months. Accordingly, Judge Kent's imposition of sanctions in the amount of $500 was not contrary to law. He had authority to do so under Federal Rule of Civil Procedure 37(c)(1)(C), even after denying the CCS Defendants' motion to strike.

## IV.     Conclusion

Based on the foregoing, Judge Kent's order (ECF No. 202) is **AFFIRMED**. The parties' appeals (ECF Nos. 204, 205) from the order are **OVERRULED**.

**IT IS FURTHER ORDERED** that payment of sanctions to the Court shall be made no later than Friday, December 29, 2017.

Date:   December 15, 2017                              /s/ Paul L. Maloney
                                                      Paul L. Maloney
                                                      United States District Judge